LaQuanda JACOBS *v.* STATE of Arkansas

CR 93-1269                                        875 S.W.2d 52

·Supreme Court of Arkansas
Opinion delivered April 25, 1994

*McArthur & Finkelstein*, by: *William C. McArthur*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal questions (1) the sufficiency of the evidence supporting the judgment of conviction for capital murder, and (2) whether the trial court erred in allowing a police detective to testify about a witness's selection of the photograph of appellant LaQuanda Jacobs at a photographic lineup. Both points raised are without merit, and we affirm.

On February 9, 1992, at approximately 5:30 p.m., Kevin Gaddy and Tony Davis were walking near the intersection of 29th Street and Jefferson in Little Rock. As they entered the intersection, a gray car pulled in front of them, and a man and a woman got out of the vehicle. The woman had a pistol. The couple demanded that Gaddy and Davis give them the Chicago Bulls jackets that they were wearing. Gaddy started to hand over his jacket but then attempted to retrieve his brush from it. A struggle ensued. The woman fired her gun striking Gaddy in the chest. Gaddy ran a few yards from the scene and then collapsed. He was dead by the time that the police arrived.

There were several witnesses to the shooting, including Tony Davis and Sean Riggins. The police questioned the witnesses who gave varying descriptions of the shooter's age (some said she was in her thirties), dress, and hair color. Most agreed that she

was about five feet eight inches tall, heavyset, and had scars under her eyes. Tony Davis told the police that she was wearing pants, a blue-gray coat, and a knit cap.

At about 7:00 p.m. on the same date, Jacobs, who was age 16, was arrested along with several other suspects. When she was taken into custody, she was wearing a two piece white dress. She was questioned and photographed. A gun shot residue test was performed on her hands but proved negative. Tony Davis was shown her photo but was unable to identify her. Jacobs was then released.

Nine days after the shooting, the Little Rock Police Detectives showed Davis a second photo lineup, which included Jacobs. Davis at this later time identified Jacobs as the woman who shot Gaddy. More than two weeks after the shooting, Detective Mike Durham conducted a photospread with Sean Riggins. Riggins identified the photograph of Jacobs. She was then charged with capital murder under Ark. Code Ann. § 5-10-101(a)(1) (Supp. 1991).

Prior to trial, Jacobs filed a motion to suppress in which she alleged generally that the two photo lineups were conducted in a manner that violated her constitutional rights. At the trial that followed, the prosecutor asked Detective Mike Durham whether Sean Riggins had identified Jacobs from a photo lineup. The defense objected, but the objection was overruled. Detective Durham stated that Riggins had identified Jacobs from a photographic display. The court then changed its ruling on the objection and stated that it had been under the mistaken impression that Detective Durham was testifying that Riggins identified Jacobs from a physical lineup. The court admonished the jury to disregard the detective's testimony relating to the photospread identification. At the conclusion of Detective Durham's testimony, the court reversed its ruling once again and stated that there was no difference between Detective Durham's testifying that Riggins identified Jacobs from a photo lineup or from a physical lineup. The court instructed the jury that it could consider all of the detective's testimony, including that relating to Riggins's identification of Jacobs from a photo lineup.

At the end of the State's case, Jacobs moved for a directed

verdict due to insufficient evidence which was denied. Her defense which followed consisted of several alibi witnesses who placed her at a location other than the scene of the crime at the time of the shooting. She renewed her motion for a directed verdict at the close of her case which was also denied. The jury found Jacobs guilty of capital murder and sentenced her to life imprisonment without parole.

Jacobs's first claim of error is that there was insufficient evidence to support the verdict. We disagree. Our analysis for determining whether sufficient evidence exists to support a conviction has been made clear:

> A motion for directed verdict is a challenge to the sufficiency of the evidence. *Glick* v. *State*, 275 Ark. 34, 627 S.W.2d 14 (1982). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Thomas* v. *State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Lukach* v. *State*, 310 Ark. 119, 835 S.W.2d 852 (1992). In determining the sufficiency of the evidence, we review the proof in the light most favorable to the appellee, considering only that evidence which tends to support the verdict. *Brown* v. *State*, 309 Ark. 503, 832 S.W.2d 477 (1992).

*Moore* v. *State*, 315 Ark. 131, 134, 864 S.W.2d 863, 865 (1993); *see also Cleveland* v. *State*, 315 Ark. 91, 865 S.W.2d 285 (1993); *Friar* v. *State*, 313 Ark. 253, 854 S.W.2d 318 (1993); *Smith* v. *State*, 308 Ark. 390, 824 S.W.2d 838 (1992).

██ In the case at hand, in order to establish that Jacobs committed capital murder the State had the burden of showing that she committed or attempted to commit aggravated robbery, and that during the course of that robbery or attempt she caused the death of Kevin Gaddy. The State did so with the eyewitness testimony of Tony Davis and Sean Riggins as well as with the testimony of Detective Durham, who subsequently conducted the photographic lineup. The unequivocal testimony of Tony Davis, who identified Jacobs as the assailant, is sufficient on its own to sustain this conviction. *See Luckey* v. *State*, 302 Ark. 116, 787

S.W.2d 244 (1990); *Davis* v. *State*, 284 Ark. 557, 683 S.W.2d 926 (1985). Indeed, the testimony of Sean Riggins would be sufficient by itself to sustain this conviction. *Id.* Jacobs denied any participation in the murder and had alibi witnesses placing her in different dress and at a different location, which meant that the real question before the jury was the credibility of all of the witnesses. This was a matter for the jury to resolve, and it did so against Jacobs. *See Smith* v. *State*, 308 Ark. 390, 824 S.W.2d 838 (1992); *Hamm* v. *State*, 296 Ark. 385, 757 S.W.2d 932 (1988); *Urquhart* v. *State*, 273 Ark. 486, 621 S.W.2d 218 (1981). In sum, the evidence supporting conviction was clearly substantial.

Jacobs's other allegation on appeal is that the trial court erred in permitting Detective Durham to testify at trial about Davis's and Riggins's identification of her from a photospread. She claims that this testimony constituted hearsay and that there was no applicable exception to the bar against hearsay.

At the outset, it should be noted that 'Detective Durham only testified concerning *Riggins's* identification of Jacobs at the photographic lineup which means the potential error raised by Jacobs is limited only to the detective's testimony about Riggins. It is well established that hearsay testimony is generally inadmissible due to lack of trustworthiness. However, Detective Durham's testimony was not hearsay. *See* Ark. R. Evid. 801 (d)(1)(iii). This rule provides in relevant part:

(d) Statements Which Are Not Hearsay. A statement is not hearsay if:

(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is. . .

(iii) one of identification of a person made after perceiving him.

Detective Durham's testimony was that Riggins identified Jacobs from a photo display. Riggins made this identification after seeing Jacobs shoot Gaddy. Riggins also testified at trial and identified Jacobs at trial. He was then cross-examined.

In *Hilton* v. *State*, 278 Ark. 259, 644 S.W.2d 932 (1983), this court resolved the issue raised by Jacobs. There, the appellant

argued that a police officer should not be allowed to testify that a convenience store clerk picked him out of a physical lineup. We stated:

> These contentions were recently considered and rejected in *Martin* v. *State*, 272 Ark. 376, 614 S.W.2d 512 (1981). In that case we held that under Rule 801(d)(1)(iii), Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979) a police officer could properly testify as to the existence and circumstances of an extrajudicial identification by witnesses if there is no defect in the identification procedure used, and if the person making the extrajudicial identification is present at trial and subject to cross-examination, recall, or is subject to being called as a hostile witness by the defense.

278 Ark. at 260, 644 S.W.2d at 932. The *Hilton* and *Martin* cases control the case before us. Here, Jacobs fails to establish or even to argue at trial that there was a defect in the process itself. As a result, since the witness, Sean Riggins, was present at trial, identified Jacobs at trial, and was subject to cross-examination, Detective Durham's testimony was properly admitted under Ark. R. Evid. 801(d)(1)(iii). The trial court's ruling was correct.

The record has been examined pursuant to Ark. Sup. Ct. R. 4-3(h), and there is no error that has been identified that would warrant reversal.

Affirmed.